The PRESIDENT.
The motion made in the County Court, as well as the grounds of the courts opinion, are imperfectly stated in the record; and had nothing else appeared, perhaps it might not have been sustainable. But, as the short entry of the motion and judgment was probably occasioned by the bill of exceptions stating the whole evidence, if from thence it appears, that a second execution issued, and was levied, after a former one had been issued on the same judgment against the same party, returned, “levied on slaves and a replevin bond taken” — the ground of the courts' opinion will sufficiently appear, to enable a superior court to judge of its propriety.
The first execution is set forth, dated November 18th 1789, returnable to January court, and directed to the sheriff of Cumberland County. The return dated the 23d November 1789, is “levied on Peter, &c. and replevied for twelve months, J. Hendricks security.”
The second execution does not appear in the record, nor the date of it; except, that it .is stated in the petition for the superse-deas, to have been issued April 29th 1790, against Hendricks and Taylor, and to have been served on Taylor’s property only — and that this was the execution which Taylor moved to quash, and which was. quashed in June 1790.
The time of the first execution being returned (on which the question as to the propriety of issuing the second will turn) is no otherwise ascertained, than by the date of the return; which I suppose (as expressed) is the day on which it was levied.
"It was for this purpose, I presume, that the execution book was referred to, where, I suppose, the clerk enters the time of the return; otherwise, I can see no reason for referring to it at all, as the first execution with the return on it, was before the court.
*427 The bill of exceptions presents four questions, propounded to, and decided by the court. The first is a general one: Is the execution book a record, not to be contradicted by parol proof? The court decided in the affirmative. The nature, and tendency of the parol proof, not being stated, it is difficult to decide the question, as a general one either way. That the execution book, directed by law to be kept by the clerk, becomes part of the records, seems generally true. But, as in this instance, the time of returning an execution, is entered by the clerk in his office, without any writing to direct him, and as he might make a mistake in his entry, although prima facie it will be presumed right, it would seem too rigorous to preclude a part from denying the truth of the entry, if made out by clear proof.
Suppose a case of a motion to fine a sheriff for not returning an execution in time: the execution book might be received, as prima facie evidence, to prove the time of the return, liable to be contradicted by other proof. However, as no evidence is stated in this case to have been offered, to prove a mistake in the entry, I conclude that the question is stated as a general one, relative to the particular evidence spread upon the record.
The second question is: whether the defendant might be admitted to prove, by any evidence less than record, that the first execution was not issued by the order of Dundass, or his attorney? This is decided by the court in the negative.
The third point made, was: whether the defendant might be at liberty to prove, that Taj'lor undertook the management of the first execution, which was, by his agent, unduly served, and unfairly executed ; so as to deprive the defendant of the benefit thereof? the court thought such evidence inadmissible, and not to be heard.
The fourth question was: whether the second execution ought to be quashed, being levied only on Taylor’s estate, and it not appearing that Dundass had received any part of his judgment, or any satisfaction therefor, from the said Hendricks and Taylor, or from any other person? This was decided in the affirmative. Whether the evidence, offered to be given, was admissible or not, as contradicting a record, was *'entirely immaterial, and did not tend to oppose the motion for quashing the second execution. It might have afforded good ground for quashing the first execution, or might have entitled Dun-dass to a suit against Taylor for his conduct, but it could not warrant the issuing of the second execution, where a former one had been returned levied, and continued at that time in force, unquashed.
As to the fourth question, it is made a point: Whether the first execution being returned levied, was a bar to the second, if no actual satisfaction was made on the first. The replevy bond is the same as if the estate had been sold to the amount of the debt; and though it is an indulgence given to the defendant, still the execution is considered as levied, and the judgment discharged.
According to the English authorities, if a motion be made to quash a second execution, or a writ of scire facias issue, to have execution, after service on one defendant; if the first execution be valuable, as an elegit, levari facias or fi. fa. executed on the estate of one, a new execution can never issue on that judgment, whatever becomes of the estate, unless the first execution be quashed; but it is otherwise in case of an execution against the body; for 'that is not a satisfaction, but only tends to satisfy. — -But in that case, whilst the body is in custody, a new execution cannot issue, and the question can only come on, when an escape or death happens, or when the party is discharged by taking the oath of an insolvent debtor. The distinction is taken in Blumfield’s case, 5 Co. Rep. and many others, and I believe no case lays it down, that a second fi. fa. can issue on the same judgment against several defendants, if upon the first, a sufficiency of goods had been taken, no matter to which of them they belonged.
In the case of Dykes against Mercer, cited in 2 Ld. Ray. 1072, two were bound in a bond jointly and severally, and judgment obtained in a separate suit against one. A fi. fa. issued, and a seisure to the value returned; but the property was not sold, nor the money paid. To a second action brought against the other obligor, this matter was pleaded in bar; but determined against him, nothing but actual satisfaction by the other obligor being sufficient to discharge him. In this case, both the ob-ligors might have been sued separately at the same time, and judgments obtained against each for the whole, but the plaintiff could receive but one actual satisfaction.
*The case of Hayling against Mullhall, 2 Blac. Rep. 1235, is decided upon the same principle: to wit, that the holder of a bill of exchange may sue a subsequent endorser, notwithstanding an ineffectual execution against a prior endorser. In that case, there was no doubt, as the execution was against the body, which was rendered ineffectual by being discharged by the plaintiff.
The court say in that case, that the remedy still remains in force (after the death or discharge of the defendant) against every other endorser, notwithstanding the ineffective ca. sa. in like manner, as if the plaintiff had sued out an unproductive fi. fa. I understand the court to mean by this expression, an execution on which no goods are taken.
Upon the whole, we are of opinion that the judgment of the District Court is erroneous; the evidence offered by the appellee, tending to prove that the first execution was issued and executed improperly, though if true, it would have been a good ground for quashing the first execution, if the appel-lee had made a motion for that purpose, *428 yet it did not apply in opposition to the quashing of the second execution, which issued after the first was returned executed, and remained in that state: for we think, that under the act of Assembly, a bond to replevy, whilst the execution remains un-quashed, isas complete an execution of the judgment, as if the estate had been sold to the full amount of the debt, and the party is left to pursue his new remedy upon the bond.
Judgment of the District Court reversed and that of the County Court affirmed.